Hand-Delivered



FILED
Statesville, NC

AUG 3 1 2026

Clerk, US District Court
Western District of NC

# UNITED STATES DISTRICT COURT

for the

Western District of North Carolina

Charlotte Division

| | |
|---|---|
| Annie M. Makin<br><br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. 3:26-cv-706-KDB<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☑ Yes ☐ No |
| -v- | |
| Sherrill Contract Manufacturing, Inc., Extensis Inc., Rick A. Hargis, Robert P. Tesseneer<br><br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Annie M. Makin |
| Street Address | 1403 4th St. SW |
| City and County | Conover, Catawba County |
| State and Zip Code | North Carolina, 28613 |
| Telephone Number | (828) 610-1067 |
| E-mail Address | makin.anna.marie@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Sherrill Contract Manufacturing, Inc. |
| Job or Title *(if known)* | Company |
| Street Address | 110 Durkee Lane PO Box 478 |
| City and County | Dallas, Gaston County |
| State and Zip Code | North Carolina, 28034 |
| Telephone Number | (704) 922-7871 |
| E-mail Address *(if known)* | rhargis@sherrillcm.com |

Defendant No. 2

| | |
|---|---|
| Name | Extensis Inc. |
| Job or Title *(if known)* | Company |
| Street Address | Woodbridge Corporate Plaza, 485E US Highway 1 South, 3rd Floor |
| City and County | Iselin, Middlesex County |
| State and Zip Code | New Jersey, 08830 |
| Telephone Number | (732) 362-9955 |
| E-mail Address *(if known)* | nkapiotis@extensishr.com |

Defendant No. 3

| | |
|---|---|
| Name | Rick A. Hargis |
| Job or Title *(if known)* | President/Owner |
| Street Address | 812 Scotty Court |
| City and County | Cramerton, Gaston County |
| State and Zip Code | North Carolina, 28032 |
| Telephone Number | (931) 265-8653 |
| E-mail Address *(if known)* | rhargis@sherrillcm.com |

Defendant No. 4

| | |
|---|---|
| Name | Robert P. Tesseneer |
| Job or Title *(if known)* | General Manager |
| Street Address | 906 East Ninth Avenue |
| City and County | Gastonia, Gaston County |
| State and Zip Code | North Carolina, 28054 |
| Telephone Number | (704) 648-9609 |
| E-mail Address *(if known)* | rtesseneer@sherrillcm.com |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Sherrill Contract Manufacruting, Inc. |
| Street Address | 110 Durkee Lane |
| City and County | Dallas, Gaston County |
| State and Zip Code | North Carolina, 28035 |
| Telephone Number | (704) 922-7871 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

ADA Retaliation 42 U.S.C. § 12203

☑ Relevant state law *(specify, if known)*:

North Carolina common-law intentional infliction of emotional distress.

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [x] Other acts *(specify)*: Inconsistent ADA leave and return-to-work requirements.

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

Multiple dates from February 26, 2025 with related communications continuing through June 11, 2025.

C. I believe that defendant(s) *(check one)*:

- [ ] is/are still committing these acts against me.
- [x] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [ ] race
- [ ] color
- [x] gender/sex Female
- [ ] religion
- [ ] national origin
- [ ] age *(year of birth)* ________ *(only when asserting a claim of age discrimination.)*
- [x] disability or perceived disability *(specify disability)*

Adjustment Disorder (F43.23),

E. The facts of my case are as follows. Attach additional pages if needed.

See Attachment: Statement of Claims beginning on Attachment Page 1 and Statement of Facts beginning on Attachment Page 8.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

July 18, 2025 Attached as Appendix A

B. The Equal Employment Opportunity Commission *(check one)*:

- [ ] has not issued a Notice of Right to Sue letter.
- [x] issued a Notice of Right to Sue letter, which I received on *(date)* 7/27/2026

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)* Attached as Appendix B

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

- [ ] 60 days or more have elapsed.
- [ ] less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

A. Back Pay and Lost Benefits. Back pay through September 1, 2026, calculated from Plaintiff's lost salary, anticipated compensation increases, bonus compensation, and $100 monthly cellular telephone stipend $110,048.93, less $25,888.16 in interim earnings and unemployment compensation received during the relevant period. Plaintiff presently calculates her net back-pay loss through September 1, 2026 as $84,160.77

See Attachment: Additional Relief Requested beginning on Attachment Page 18.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 8/31/2026

Signature of Plaintiff [signature]

Printed Name of Plaintiff Annie M. Makin

### B. For Attorneys

Date of signing: ________

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**III. Statement of Claim Continued**

## COUNT I

## TITLE VII RETALIATION / RETALIATORY HOSTILE WORK ENVIRONMENT / CONSTRUCTIVE DISCHARGE

### Against Defendant Sherrill Contract Manufacturing, Inc.

1. Plaintiff repeats and re-alleges Paragraphs 38–91 and incorporates those allegations by reference in support of this Count.

2. Plaintiff engaged in protected activity under Title VII on February 26, 2025, when she reported to Sherrill's President and Owner, Rick Hargis, and General Manager, Robert Tesseneer, that employee Michael Horton had repeatedly touched her lower back and made a sexually suggestive statement during employee orientation.

3. Plaintiff reasonably and in good faith believed that the sex-related conduct she reported constituted unlawful sexual harassment, and Mr. Hargis and Mr. Tesseneer had actual knowledge of Plaintiff's complaint.

4. Within approximately forty-eight hours of Plaintiff's complaint, Mr. Tesseneer characterized the future raise and bonus provisions contained in Plaintiff's offer letter as a "clerical error," although Plaintiff subsequently learned that another employee with identical compensation language had not been given the same explanation.

5. Following Plaintiff's protected complaint, Sherrill, acting through Mr. Hargis and Mr. Tesseneer, subjected Plaintiff to increased criticism and scrutiny, questioned her performance, restricted her access to materials necessary to perform her Business Manager duties, and continued such treatment after Plaintiff repeatedly complained of retaliation.

6. Plaintiff continued engaging in protected activity by reporting the alleged retaliation to Mr. Hargis and ExtensisHR, including written complaints on April 6, April 9, and April 13, 2025.

7. During the April 11, 2025 meeting intended to address Plaintiff's retaliation complaint, Mr. Hargis first raised matters he expressly described as outside the scope of Plaintiff's written concerns and subjected Plaintiff to more than twenty minutes of criticism and scrutiny concerning her communication, demeanor, work decisions, and perceived defensiveness before addressing her retaliation complaint.

8. Plaintiff alleges that the timing of the changed treatment, its continuation following her subsequent complaints, Mr. Hargis's acknowledgment of the treatment Plaintiff was alleging, and his repeated statements that he was offended by Plaintiff's retaliation complaint support a causal connection between Plaintiff's protected activity and the materially adverse treatment.

9. The alleged retaliatory conditions continued as Plaintiff's emotional and physical health deteriorated, ultimately resulting in therapy, emergency medical treatment, a request for workplace accommodation, and medical removal from work.

10. While Plaintiff remained on approved medical leave, Sherrill imposed and maintained additional leave and return-to-work requirements that Plaintiff challenged as inconsistent with its treatment of other employees who had taken medical or disability leave.

11. On June 10, 2025, after consultation with her healthcare providers, Plaintiff resigned because the cumulative workplace conditions following her protected complaints and the resulting deterioration of her health made returning to the workplace incompatible with her recovery.

12. Plaintiff alleges that Sherrill subjected her to materially adverse treatment because

she opposed and reported perceived sexual harassment and retaliation and that the cumulative retaliatory conditions became sufficiently intolerable to result in her constructive discharge.

13. Plaintiff further alleges that the repeated criticism and scrutiny, restrictions affecting her ability to perform her duties, management's response to her complaints of retaliation, the April 11, 2025 meeting, continued escalation after subsequent complaints, and differential treatment during her medical leave collectively created a retaliatory hostile work environment. Viewed under the totality of the circumstances, the alleged conduct was sufficiently severe or pervasive that it could dissuade a reasonable worker from making or supporting a complaint of discrimination.

**COUNT II**

**ADA FAILURE TO ACCOMMODATE**

**Against Defendants Sherrill Contract Manufacturing, Inc. and Extensis, Inc.**

14. Plaintiff repeats and re-alleges Paragraphs 38–40 and 56–89 and incorporates those allegations by reference in support of this Count.

15. Sherrill Contract Manufacturing, Inc. and Extensis, Inc. had notice that Plaintiff was experiencing substantial psychological and physical symptoms affecting her ability to work. Plaintiff's medical condition substantially affected major life activities including sleeping, concentrating, and working, as reflected by documented insomnia, difficulty concentrating, anxiety, depressive symptoms, migraines and headaches, and her eventual medical removal from work.

16. Plaintiff requested temporary remote work as an accommodation on April 17, 2025, and Sherrill initially approved that request before Plaintiff was medically removed from work on April 21, 2025.

17. Plaintiff sought medical leave and a workable return-to-work process as accommodations for medical limitations of which Sherrill and Extensis had actual notice and alleges that she remained qualified to perform the essential functions of her Business Manager position with reasonable accommodation upon being medically able to return.

18. After Plaintiff's medical removal, Sherrill imposed additional ADA and leave documentation requirements that Plaintiff challenged as inconsistent with the requirements applied to four identified employees who had previously taken medical or disability leave.

19. Defendant Extensis, Inc. directly administered portions of Plaintiff's medical-leave and return-to-work process, including determining Plaintiff's FMLA ineligibility, providing ADA or Non-FMLA medical-certification documentation, identifying Plaintiff's approved leave as an "ADA job accommodation," communicating Plaintiff's June 10, 2025 planned return date, and requiring a Fitness for Duty Certification before Plaintiff returned to work.

20. At the time the Fitness for Duty requirement was imposed, Plaintiff's treating provider was not scheduled to reevaluate her until June 6, 2025, while Plaintiff's anticipated return date had been revised to June 10, 2025.

21. Plaintiff alleges that, after receiving notice of her disability and medical limitations, Defendants failed to engage in a good-faith interactive process concerning her changing accommodation needs and imposed additional and changing documentation and return-to-work requirements during her approved medical leave, including requirements Plaintiff had identified as inconsistent with the leave practices applied to other employees, thereby interfering with a reasonable process for Plaintiff to recover and return to her position.

**COUNT III**

**ADA RETALIATION**

**Against Defendants Sherrill Contract Manufacturing, Inc. and Extensis, Inc.**

22. Plaintiff repeats and re-alleges Paragraphs 38–40 and 56–90 and incorporates those allegations by reference in support of this Count.

23. Plaintiff exercised rights protected by the ADA when she disclosed her medical limitations, requested temporary remote work, utilized approved medical leave, and sought a medically appropriate process for returning to her employment.

24. Sherrill and Extensis had actual notice of Plaintiff's medical limitations, accommodation request, approved medical leave, and the emotional and physical symptoms affecting her ability to work.

25. After Plaintiff exercised those rights, Defendants imposed and maintained additional medical documentation and return-to-work requirements that Plaintiff had challenged as inconsistent with the requirements imposed upon other employees taking medical or disability leave.

26. After Plaintiff exercised her ADA-protected rights, Extensis administered portions of Plaintiff's medical-leave and return-to-work process, identified her approved leave as an "ADA job accommodation," established a planned June 10, 2025 return date, and required completion of a Fitness for Duty Certification before her return despite Plaintiff's treating provider not being scheduled to reevaluate her until June 6, 2025.

27. During Plaintiff's medical leave, Extensis also concluded the investigation of Plaintiff's workplace complaints without interviewing Plaintiff after its investigator had agreed to postpone Plaintiff's interview until she returned to work and was medically able to participate.

28. Plaintiff alleges that Defendants' conduct following her exercise of ADA-protected

rights created additional barriers to her ability to obtain and utilize reasonable accommodation and return to employment.

29. Plaintiff alleges that the additional and changing medical-leave and return-to-work requirements constituted materially adverse actions and were imposed after Defendants had actual notice of and were actively administering her ADA-protected accommodation and medical leave. Plaintiff further alleges that the timing of those requirements, their continued modification during her approved leave, and their alleged inconsistency with the medical-leave practices applied to other employees support a causal connection between her exercise of ADA-protected rights and the materially adverse treatment.

**COUNT IV**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Against Defendants Sherrill Contract Manufacturing, Inc., Extensis, Inc., Rick Hargis, and Robert Tesseneer**

30. Plaintiff repeats and re-alleges Paragraphs 38–90 and incorporates those allegations by reference in support of this Count.

31. Mr. Hargis and Mr. Tesseneer had actual knowledge of Plaintiff's sexual harassment complaint and subsequently received repeated notice that Plaintiff believed their treatment of her was retaliatory and was causing escalating emotional and physical harm.

32. Extensis received direct and repeated notice of Plaintiff's retaliation allegations, her requests for HR intervention, her discomfort addressing Mr. Hargis and Mr. Tesseneer without HR support, and her escalating emotional and physical distress.

33. Despite this knowledge, the challenged conduct continued, including escalating criticism and scrutiny, removal of Plaintiff's access to materials necessary to perform her duties,

and the April 11 meeting without requested HR intervention, during which Mr. Hargis subjected Plaintiff to extended criticism and scrutiny before addressing her retaliation complaint, repeatedly expressed that he was personally offended by her allegations, and continued scrutinizing Plaintiff's communication, demeanor, and perceived defensiveness. The challenged conduct subsequently continued through additional requirements affecting Plaintiff's medical leave and return to work.

34. Defendants received progressively greater notice of the severity of Plaintiff's condition through her reports of migraines and insomnia, request for counseling support, therapy, emergency-room treatment, request for workplace accommodation, and eventual medical removal from work.

35. Plaintiff alleges that continuing the challenged conduct after receiving repeated notice of her deteriorating condition constituted intentional or reckless conduct undertaken with disregard for the substantial likelihood that Plaintiff would suffer severe emotional distress.

36. Plaintiff suffered severe emotional distress manifested by migraines, insomnia, severe crying, inability to report to work, professional therapy, emergency medical treatment and diagnostic imaging, the need for workplace accommodation, and eventual medical removal from work.

37. Plaintiff alleges that the cumulative conduct of Defendants, particularly its continuation after Defendants received repeated notice of her deteriorating psychological and physical condition, was extreme and outrageous and directly caused Plaintiff severe emotional distress.

**E. The facts of my case are as follows: Statement of Facts**

38. On or about November 11, 2024, Defendant Sherrill Contract Manufacturing,

Inc. hired Plaintiff Annie Makin as its Business Manager, with responsibilities that included accounting, purchasing, inventory management, payroll, employee onboarding, and leave administration.

39. Plaintiff was hired at an annual salary of $80,600 and received a $100 monthly cell phone stipend as part of her compensation.

40. On or about December 23, 2024, Sherrill Contract Manufacturing, Inc. transitioned its Professional Employer Organization, which administered payroll and benefits and provided human resources guidance concerning employment policies, procedures, and compliance, to Defendant Extensis, Inc., doing business as ExtensisHR, which was identified in Plaintiff's EEOC Charge as "Extend HR (R's HR PEO)" due to a typographical error.

41. From approximately November 11, 2024, through February 26, 2025, Plaintiff regularly received positive feedback regarding her job performance from President and Owner Rick Hargis and General Manager Robert Tesseneer.

42. On or about February 26, 2025, at approximately 2:00 p.m., while performing her regular job duties, Plaintiff was onboarding and providing orientation training to newly hired employee Michael Horton.

43. On or about February 26, 2025, during Plaintiff's onboarding and orientation training of Michael Horton, and while Plaintiff was specifically reviewing ExtensisHR's sexual harassment policy, Mr. Horton reached toward and touched Plaintiff's lower back three separate times.

44. On or about February 26, 2025, during the same training, Mr. Horton made jokes about having gotten into trouble with previous employers and stated to Plaintiff, "If you weren't married, I would probably get in trouble with you."

45. On or about February 26, 2025, Plaintiff sent an email to Mr. Hargis and Mr. Tesseneer reporting the sexual harassment she experienced during Mr. Horton's orientation and training.

46. On or about February 27, 2025, Plaintiff was called into Mr. Hargis's office, where Mr. Tesseneer was also present, and was informed that Mr. Horton had been terminated that morning.

47. On or about February 27, 2025, during the meeting with Mr. Hargis and Mr. Tesseneer, Plaintiff was provided a copy of Mr. Horton's termination letter and was instructed that Danny Mingoia of Defendant Extensis, Inc. was not to receive the letter.

48. On or about February 28, 2025, within approximately 48 hours of Plaintiff reporting sexual harassment, Plaintiff inquired of Mr. Tesseneer about annual raises and was advised that the provisions in her offer letter providing for a raise and bonus in 2026 were a clerical error.

49. On or about March 18, 2025, Plaintiff informed Mr. Tesseneer that Melissa Hicks, who had been hired approximately one month before Plaintiff, had an offer letter containing the same compensation language that Mr. Tesseneer had characterized as a clerical error in Plaintiff's offer letter.

50. On or about March 18, 2025, during the same discussion concerning Plaintiff's annual performance expectations and compensation, Mr. Tesseneer raised his voice, reprimanded Plaintiff, and told her that she was "not allowed to laugh" and that "nothing was funny."

51. On or about March 20, 2025, Plaintiff entered Mr. Tesseneer's office to follow up on team-building exercises discussed during their March 18, 2025 meeting, at which time Mr. Tesseneer accused Plaintiff of being "passive-aggressive" and stated that she was "just like Rick."

52. During the last week of March 2025, Plaintiff participated in a meeting with Mr. Mingoia, Mr. Hargis, and Mr. Tesseneer concerning employee medical leaves, during which Mr. Hargis stated that Sherrill Contract Manufacturing, Inc. retained decision-making authority over employee leaves and medical accommodations.

53. On or about April 2, 2025, Mr. Hargis demanded an explanation from Plaintiff concerning a zero-dollar March Work in Process balance, and Plaintiff subsequently advised him that her investigation identified a system issue requiring Global Shop Solutions support.

54. On the morning of April 3, 2025, Mr. Hargis rushed into Plaintiff's office, demanded that she immediately come to his office, and, during the ensuing meeting, stated regarding Plaintiff's response to his WIP inquiry, "I want you to succeed in this role, but nobody should ever see that email."

55. Later on April 3, 2025, Mr. Hargis interrupted Plaintiff's scheduled budget

meeting with Mr. Tesseneer to demand attention to the unresolved inventory issue and subsequently accused Plaintiff of not performing her job duties.

56. On or about April 3, 2025, Plaintiff contacted Extensis HR Manager Danny Mingoia and subsequently met with him on April 4, 2025 to report the alleged retaliatory treatment following her sexual harassment complaint and request HR intervention.

57. On or about April 4, 2025, Plaintiff reported to work late after experiencing significant emotional distress from the events of April 3, 2025, which manifested in and exacerbated physical symptoms, including migraines and insomnia.

58. During the April 4, 2025 meeting, Mr. Mingoia informed Plaintiff that Extensis would not conduct the investigation itself because of its relationship with Mr. Hargis as the owner of its client and that a third-party investigator would be required.

59. On or about April 4, 2025, Mr. Mingoia provided Plaintiff with Employee Assistance Program ("EAP") information so that she could obtain counseling support in response to the emotional distress she reported experiencing from the workplace treatment.

60. On or about April 6, 2025, Plaintiff sent Mr. Hargis two separate emails documenting and seeking resolution of the alleged retaliatory treatment and the discrepancy concerning the salary increase and bonus stated in her offer letter.

61. On or about April 7, 2025, Plaintiff asked Melissa Hicks whether she had been told that the identical raise and bonus provisions in her offer letter were a clerical error, and

Ms. Hicks confirmed that she had not.

62. On or about April 7, 2025, Plaintiff discovered that office keys providing access to personnel, payroll, Form I-9, and petty-cash records had been removed without explanation, restricting her access to materials necessary to perform her Business Manager duties.

63. On or about April 8, 2025, Plaintiff was unable to report to work due to the escalating emotional distress caused by Mr. Hargis's continued retaliatory treatment despite Plaintiff's formal internal complaints, which exacerbated Plaintiff's insomnia and migraines.

64. On or about April 9, 2025, Plaintiff approached Mr. Hargis because she needed the missing office keys to access the locked file cabinet and perform her assigned duties.

65. Mr. Hargis confirmed that he had removed Plaintiff's office keys and stated that he intended to address the matter during the April 11, 2025 meeting.

66. On or about April 9, 2025, Plaintiff submitted a formal retaliation complaint with supporting documentation to Mr. Mingoia and informed him that she was uncomfortable addressing the escalating concerns with Mr. Hargis or Mr. Tesseneer without HR intervention.

67. On or about April 9, 2025, Plaintiff participated in an EAP therapy session concerning escalating workplace stress and anxiety, during which she reported symptoms including anxiety, sleep disturbance, fatigue, and difficulty concentrating.

68. On or about April 10, 2025, Plaintiff was unable to report to work after experiencing migraines and insomnia throughout the night following her initial therapy session.

69. On or about April 11, 2025, Plaintiff attended a meeting with Mr. Hargis and Mr. Tesseneer that was intended to address Plaintiff's retaliation complaint; instead, more than twenty minutes of the meeting focused on criticism and scrutiny of Plaintiff unrelated to the stated purpose of the meeting.

70. Despite Defendant Extensis, Inc.'s prior notice of Plaintiff's retaliation allegations, emotional distress, and expressed discomfort addressing these matters directly with Mr. Hargis and Mr. Tesseneer, Extensis, Inc. did not participate in or provide HR support during the April 11, 2025 meeting.

71. On or about April 11, 2025, during a meeting Plaintiff had requested to address her written concerns regarding retaliation, Mr. Hargis first raised matters he expressly described as outside the scope of Plaintiff's written concerns and engaged Plaintiff in an extended discussion concerning her communication, body language, work decisions, and perceived defensiveness. During portions of that discussion, Mr. Hargis characterized Plaintiff's attempts to explain her actions as further examples of defensiveness.

72. When Plaintiff attempted to explain her concerns regarding changes in Mr. Hargis's treatment and demeanor toward her, Mr. Tesseneer compared Plaintiff's own body language and tone toward another employee to the conduct Plaintiff was describing, told Plaintiff not to hold management to an "unachievable standard," and assured Plaintiff that

Mr. Hargis's conduct was not directed at her. Mr. Tesseneer further explained that expressions of frustration were characteristic of Mr. Hargis and encouraged Plaintiff not to interpret them as hateful or intended to diminish her.

73. When Mr. Hargis subsequently addressed Plaintiff's written complaint, he expressly summarized Plaintiff's allegation as being treated differently since the termination of the employee whose sexual conduct Plaintiff had reported, acknowledged the timeline Plaintiff had provided in support of that concern, and repeatedly stated that he was offended by Plaintiff's allegation. Plaintiff explained that certain treatment identified in her complaint had not occurred before the reported sexual harassment and that she raised the concern in hopes that management would clarify whether she was misperceiving the change in treatment.

74. During the same meeting, Mr. Hargis addressed the disputed compensation provision in Plaintiff's offer letter, acknowledged that he had included language he had not intended to include, stated that he would "own it," and indicated that the compensation issue would be rectified. This discussion occurred after Plaintiff had previously been informed that the compensation provisions were a "clerical error."

75. On or about April 13, 2025, Plaintiff emailed Mr. Mingoia of Defendant Extensis, Inc. and attached a written memorandum documenting the conduct of the April 11, 2025 meeting, the continued escalation of the alleged retaliatory treatment, and her concerns regarding the amount of the salary increase she received compared with raises provided to specifically identified employees.

76. On or about April 16, 2025, Plaintiff participated in a second EAP therapy session concerning escalating workplace harassment, bullying, and retaliation and reported insomnia, migraines, crying spells, anxiety, depression, and emotional distress. During the session, Plaintiff experienced severe crying and sudden extreme head pain requiring emergency-room treatment and diagnostic imaging to rule out a brain aneurysm.

77. On or about April 17, 2025, Plaintiff emailed Mr. Hargis and Mr. Tesseneer requesting a temporary work-from-home accommodation due to her escalating medical symptoms.

78. On or about April 20, 2025, Mr. Hargis approved Plaintiff's request to temporarily work remotely pending further discussion.

79. On or about April 21, 2025, Plaintiff was medically removed from work after being diagnosed with F43.23, Adjustment Disorder with Mixed Anxiety and Depressed Mood, and was determined unable to work at that time for psychiatric reasons, following escalating symptoms that included insomnia, migraines, anxiety, depression, difficulty concentrating, and severe emotional distress.

80. On or about April 22, 2025, Mr. Hargis issued a conditional executive-level approval of Plaintiff's medical leave and imposed additional ADA and leave-of-absence documentation requirements.

81. On or about April 29, 2025, Mr. Hargis, on behalf of Sherrill Contract Manufacturing, Inc., reaffirmed approval of Plaintiff's medical leave while maintaining the additional documentation requirements and outlining the company's interpretation of the

leave process.

82. The additional leave requirements maintained by Mr. Hargis differed from the leave practices Plaintiff had previously observed and participated in administering for other Sherrill employees, which Plaintiff had already raised with Defendants as a concern.

83. On or about April 30, 2025, Plaintiff informed Mr. Hargis and Mr. Mingoia that her treating providers attributed her medical condition to the workplace bullying and hostile work environment she had reported. Although Mr. Mingoia had previously stated that Extensis, Inc. was reviewing Plaintiff's complaints internally and would provide next steps, he had not provided Plaintiff those next steps or followed up regarding the internal review and continued to receive communications concerning Plaintiff's medical leave and reported workplace conditions.

84. On or about May 5, 2025, Mr. Hargis confirmed that Plaintiff's medical leave remained approved through June 9, 2025, that her position and salary would be protected through June 6, 2025, and that any discussion concerning an extension would occur only if additional leave became necessary.

85. On or about May 8, 2025, Catherine Ricker contacted Plaintiff and identified herself as an HR Consultant working with Defendant Extensis, Inc. to investigate Plaintiff's reported concerns.

86. After third-party investigator Catherine Ricker contacted Plaintiff, Plaintiff advised Ms. Ricker that she was medically unable to participate in an interview, and Ms. Ricker agreed to postpone the required interview until Plaintiff returned to work and was

medically able to participate.

87. On or about May 28, 2025, Defendant Extensis, Inc. required Plaintiff's healthcare provider to complete a Fitness for Duty Certification before Plaintiff returned to work. The accompanying form stated that failure to submit the certification could delay or prevent Plaintiff's return and required an employee returning with restrictions to contact the designated HR representative at least five business days before returning.

88. Plaintiff's treating provider was not scheduled to reevaluate her until June 6, 2025, and Plaintiff's anticipated return date had been revised to June 10, 2025.

89. On or about June 10, 2025, after consultation with her healthcare providers, Plaintiff emailed Mr. Hargis and Mr. Mingoia of Defendant Extensis, Inc. and resigned because returning to the workplace was not conducive to her recovery in light of the escalating retaliatory treatment and resulting harm to her emotional and physical well-being. Plaintiff identified the repeated changes to her leave and return-to-work requirements and dates as contributing to her decision.

90. On or about June 10, 2025, Plaintiff first learned that the third-party investigation had been concluded and that her complaints had been deemed unsubstantiated, despite Ms. Ricker's May 15, 2025 agreement to postpone Plaintiff's interview until Plaintiff returned to work and was medically able to participate.

91. On or about July 18, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") arising from the discrimination and retaliatory treatment described herein.

**V. Relief Continued**

B. Front Pay and Lost Benefits. Front pay in lieu of reinstatement for a period of five years beginning September 1, 2026, based upon Plaintiff's anticipated salary, annual compensation increases, bonus compensation, and $100 monthly cellular telephone stipend. The cellular telephone stipend is calculated at $6,000.00 for the 60-month front-pay period. Plaintiff presently calculates her total five-year front-pay loss as $505,952.23, subject to adjustment based upon mitigation, evidence presented, and the period of front pay determined appropriate by the Court.

C. Medical Expenses. Actual medical expenses presently totaling $606.49, consisting of approximately $463.00 for emergency medical treatment, $45.00 for Brightside Health treatment, and $98.49 for Catawba Valley medical treatment, together with any additional recoverable medical or treatment expenses established through the evidence.

D. Economic Damages. Plaintiff presently calculates her combined back-pay and front-pay losses at $590,113.00, exclusive of medical expenses, compensatory damages, punitive damages, interest, costs, and other relief. Including presently identified medical expenses, Plaintiff's currently quantified economic and medical losses total $590,719.49.

E. Compensatory Damages. Compensatory damages for emotional pain, mental anguish, psychological and physiological distress, inconvenience, loss of enjoyment of life, medical and other pecuniary losses, and other compensable injuries caused by Defendants' alleged conduct, in the maximum amount permitted under applicable federal and North Carolina law, as determined by the trier of fact, without limiting Plaintiff to any amount below that established by the evidence.

F. Punitive Damages. Punitive damages against those Defendants for whom such

damages are legally available, in the maximum amount permitted under applicable federal and North Carolina law, as determined by the trier of fact and subject to applicable statutory limitations, based upon Plaintiff's allegations that the actionable conduct was undertaken with the malice, reckless indifference, willful or wanton conduct, or other culpability required for such an award.

G. Equitable Relief. Appropriate equitable relief, including reinstatement if determined feasible and appropriate, or front pay in lieu of reinstatement; correction of Plaintiff's employment records where appropriate; and such appropriate injunctive or corrective relief as the Court determines necessary to remedy the unlawful employment practices established in this action.

H. Interest. Prejudgment and post-judgment interest on all amounts for which such interest is legally recoverable.

I. Costs and Fees. Plaintiff's recoverable costs of this action and any attorney's fees or other litigation expenses that may become recoverable under applicable law.

J. Other Relief. Such other legal or equitable relief as the Court determines just and proper.